UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK GLOVER,

    Plaintiff,                                       Hon. Ellen S. Carmody

v.                                                      Case No. 1:07-CV-81

CLIENT SERVICES, INC., et al.,

    Defendants.
_____/

**OPINION**

This matter is before the Court on <u>Defendant CSI's Motion for Judgment on the Pleadings for Counts VI, VII, VIII, & XII</u>. (Dkt. #51). On April 6, 2007, the parties consented to proceed before the undersigned for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred this case to the undersigned. (Dkt. #18). A hearing on Defendant's motion was held on August 16, 2007. For the reasons articulated below, Defendant's motion is **granted**.

**BACKGROUND**

The following allegations are contained in Plaintiff's amended complaint. (Dkt. #38). On October 10, 2006, Defendant Hart, an employee of Defendant Client Services, Inc. (CSI), telephoned Plaintiff regarding the collection of a debt which Plaintiff owed. Plaintiff instructed Hart to instead contact "senior advocates," an organization that "advocates for seniors with disabilities." Plaintiff provided Hart with the telephone number of this organization.

On October 18, 2006, Defendant Hart contacted Plaintiff by voice mail. Hart informed Plaintiff that he was unable to speak with anybody at "senior advocates" because the number Plaintiff provided him was "just an automatic recording." Hart, therefore, asked Plaintiff to forward his [Hart's] telephone number to "senior advocates" so that they could contact him regarding Plaintiff's debt.

On October 23, 2006, a man named Harrison Smith contacted Plaintiff by voice mail. Smith provided his telephone number and asked Plaintiff to contact him. On October 30, 2006, Defendant Hart contacted Plaintiff by voice mail. Hart provided his telephone number and asked Plaintiff to return his call. On November 1, 2006, Smith telephoned and spoke with Plaintiff regarding the collection of Plaintiff's debt. Plaintiff informed Smith that he was "a little tired of you calling me" and instead provided Smith with the telephone number of his attorney.

Plaintiff initiated the present action on January 26, 2007, alleging that Defendants violated numerous provisions of the Fair Debt Collection Practices Act (FDCPA) and the Michigan Occupational Code. Plaintiff amended his complaint on June 4, 2007, alleging several additional violations of the FDCPA and the Michigan Occupational Code. Defendant CSI now moves to dismiss several counts of Plaintiff's amended complaint on the grounds that such fail to state a claim on which relief may be granted. As detailed herein, the Court grants Defendant's motion.

## **STANDARD**

Defendant brings the present motion pursuant to Federal Rule of Civil Procedure 12(c) which provides that "[a]fter the pleadings are closed. . .any party may move for judgment on the pleadings." The standard applicable to a motion asserted under Rule 12(c) is the same as that applied

to a motion brought under Rule 12(b)(6). *See Lindsay v. Yates*, - - - F.3d - - -, 2007 WL 2316626 at *2 (6th Cir., Aug. 15, 2007).

Pursuant to Rule 12(b)(6), a claim may be dismissed for failure to state a claim upon which relief may be granted where, even accepting as true Plaintiff's allegations and construing the complaint in the light most favorable to Plaintiff, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## **ANALYSIS**

Congress enacted the FDCPA to eliminate "abusive, deceptive, and unfair" debt collection practices. *See* 15 U.S.C. § 1692(a), (e). The Senate Report regarding the FDCPA justified the need for this legislation by recognizing that:

> Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

*Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 398 (6th Cir. 1998) (citation omitted).

Congress, however, recognized the legitimacy of debt collection observing that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c). Thus, Congress sought to "eliminate abusive debt collection practices" while also insuring "that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *See* 15 U.S.C. § 1692(e). The FDCPA represents a comprehensive attempt to balance these competing interests. *See Sayyed v. Wolpoff & Abramson*, 485

F.3d 226, 233 (4th Cir. 2007); *Orenbuch v. North Shore Health Systems, Inc.*, 250 F.Supp.2d 145, 153 (E.D.N.Y. 2003); *Thomas v. Pierce, Hamilton, and Stern, Inc.*, 967 F.Supp. 507, 510 (N.D. Ga. 1997).

Several of the claims asserted in Plaintiff's amended complaint concern Defendant CSI's use of caller ID. Specifically, Plaintiff asserts that CSI intentionally "blocked caller ID from registering its telephone number" causing Plaintiff's caller ID device to display "unavailable." Thus, Plaintiff claims that "CSI's telephone number is not revealed to the consumer it calls." Plaintiff asserts that such violates several provisions of the FDCPA as well as the Michigan Occupational Code. Defendant CSI seeks the dismissal of such claims. The Court will separately address each of these claims.

**I.        Count VI of Plaintiff's Amended Complaint**

In enacting the FDCPA, Congress was in part concerned about debt collectors employing false or misleading tactics. Accordingly, in part, the FDCPA provides that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e

Plaintiff asserts that "at all times relevant, CSI blocked caller ID from registering its telephone number" causing the recipient's caller ID device to display "unavailable." As a result, Plaintiff alleges that "CSI's telephone number is not revealed to the consumer it calls." Plaintiff asserts

that by "blocking" its telephone number CSI "falsely represented its telephone number." Plaintiff claims that this activity is "deceptive" and "misleading" in violation of the provision quoted above. *Id.*

To determine whether action by a debt collector is false or deceptive, the Court must apply an objective standard based on the understanding of the "least sophisticated consumer." *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 331 (6th Cir. 2006). Examples of conduct found to violate this particular provision include "impersonating a public official," "falsely representing that unpaid debts will be referred to an attorney," and "misrepresenting the amount of the debt owed." *Id.*

Plaintiff asserts that CSI acted to prevent its telephone number from appearing on his caller ID device. As a result, when Defendant telephoned Plaintiff, Plaintiff's caller ID device allegedly displayed "unavailable" rather than Defendant's telephone number. Even accepting as true Plaintiff's allegations, the Court fails to discern how such is "false" or "deceptive." To the contrary, the display in Plaintiff's caller ID device of the word "unavailable" was entirely accurate. Defendant allegedly acted to make its telephone number unavailable to the caller ID devices of the individuals it telephoned. Such was accurately communicated to Plaintiff when his caller ID device displayed the word "unavailable." The Court discerns nothing false or deceptive about Defendant's actions.

Plaintiff asserts that *Knoll v. Intellirisk Management Corp.*, 2006 WL 2974190 (D. Minn., Oct. 16, 2006), supports his position. In that case, Intellirisk telephoned Knoll in an attempt to collect a debt, at which time Knoll instructed Intellirisk "not to call him anymore." *Id.* at *1. Despite this instruction, Intellirisk "persisted" in telephoning Knoll. These calls were placed from a telephone number which registered as "Jennifer Smith" in Knoll's caller ID device. Knoll alleged that "Defendants' practice of transmitting the false name 'Jennifer Smith' via a caller identification device to consumers to lure them into answering the phone or returning Defendants' calls" violated 15 U.S.C.

§ 1692e. *Id.* Intellirisk moved to dismiss this claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The court denied Intellirisk's motion. This decision is, however, distinguishable from the present circumstance.

First, Knoll asserted that Intellirisk's conduct violated two separate provisions of 15 U.S.C. § 1692e. Specifically, Knoll asserted that the conduct at issue violated subsection (10) (upon which Plaintiff relies), but subsection (14) as well. Subsection (14) precludes "the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14). In denying Intellirisk's motion to dismiss, the court focused its analysis on subsection (14) not subsection (10). *Id.* at *3-4. Specifically, the court found that by telephoning Knoll from a telephone which caused the name Jennifer Smith to appear in Knoll's caller ID device, Intellirisk had improperly used a name other than its "true name" in violation of subsection (14). *Id.* Plaintiff is not alleging that CSI violated subsection (14), but instead asserts that it violated subsection (10). With respect to this provision, the most that can be said regarding the *Knoll* decision is that the court determined (reasonably so in the Court's opinion) that Intellirisk's conduct of identifying itself by a false name - in violation of subsection (14) - constituted false or deceptive conduct in violation of subsection (10). Plaintiff, however, is not alleging that CSI identified itself using a false name.

Moreover, even if the *Knoll* court had relied exclusively on subsection (10) to deny Intellirisk's motion to dismiss, the factual circumstances are sufficiently distinct to render it inapplicable in the present circumstance. As noted, Intellirisk contacted Knoll using a telephone registered to Jennifer Smith, thereby causing the name Jennifer Smith to appear in Knoll's caller ID device. Such conduct can, in the Court's estimation, reasonably be considered false or deceptive because it conveys

inaccurate information intended to confuse the recipient as to the identity of the caller. Such is distinct from the present circumstance. Here, CSI is alleged to have caused the word "unavailable" to appear in Plaintiff's caller ID device. As previously noted, this information was entirely accurate as it conveyed that the identity of the caller was not available. Rather than being misled into answering his phone based on the representation that the caller was "Jennifer Smith," here Plaintiff was accurately informed that the identity of the caller was unavailable. Plaintiff then could choose whether to answer his telephone. Thus, while *Knoll* supports the proposition that a debt collector cannot contact an individual using a telephone that causes false information to appear in the individual's caller ID device, the Court does not interpret this decision as supporting Plaintiff's position that the communication of accurate information constitutes false or deceptive behavior in violation of 15 U.S.C. § 1692e(10). Accordingly, the Court grants Defendant's motion to dismiss Count VI of Plaintiff's Amended Complaint.

## II.        Count VII of Plaintiff's Amended Complaint

The FDCPA provides in part that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This provision identifies several examples of conduct which constitute "unfair" or "unconscionable" conduct. Plaintiff does not allege that CSI violated any of these provisions, but instead relies on the "all-encompassing" general prohibition against "unfair or unconscionable" conduct.

The Court recognizes that other courts have interpreted § 1692f as a "broad" and "expansive" prohibition. *See Knoll v. Allied Interstate, Inc.*, - - - F.Supp.2d - - -, 2007 WL 1825400 at *4 (D. Minn., June 21, 2007); *Winn v. Unifund CCR Partners*, 2007 WL 974099 at *6 (D. Ariz., Mar.

30, 2007); *Udell v. Kansas Counselors, Inc.*, 313 F.Supp.2d 1135, 1139-40 (D. Kan. 2004); *Charles v. Check-Rite, Ltd.*, 1999 WL 1576167 at \*\*2 (D. Ariz., Jan. 5, 1999). Aside from the fact that none of these decisions are controlling on this Court, it must further be recognized that these cases involved far different factual circumstances.

For example, in *Check-Rite*, the plaintiff alleged that the defendant had attempted to collect charges "that were not authorized by law or contract." *Check-Rite*, 1999 WL 1576167 at \*1-2. In *Unifund*, the plaintiff alleged that the defendants had likewise attempted to "collect monies not expressly authorized by the contract creating the debt, or expressly authorized by law." *Unifund*, 2007 WL 974099 at \*6. The *Udell* case involved a plaintiff who alleged that the defendant continued to communicate with her after receiving a cease-and-desist letter. *Udell*, 313 F.Supp.2d at 1137-38. Finally, the *Knoll* case involved a situation in which the defendant placed calls from a telephone which deceptively registered in the plaintiff's caller ID device as "Jennifer Smith." The conduct alleged in these cases easily qualifies as the type of "unfair" or "unconscionable" conduct which Congress sought to eliminate with passage of the FDCPA.

On the other hand, the Court fails to discern how the conduct alleged in this matter constitutes the type of unfair or unconscionable conduct outlawed by the FDCPA. Although the list of prohibited conduct is admittedly not all inclusive, the Court fails to discern how the alleged conduct is evan remotely similar to the listed conduct. As previously observed, in passing the FDCPA Congress expressly recognized that debt collection is a legitimate activity. Moreover, the FDCPA was passed before the advent of caller ID. Thus, when Congress enacted this legislation it was perfectly legal for a debt collector to place a telephone call to a debtor without first identifying themselves. The Court is not persuaded that the advent of caller ID technology has - in the face of congressional silence on the

matter - so dramatically altered the rights and responsibilities of debt collectors. While the Court understands that Plaintiff would prefer that the FDCPA be so amended, in our system of government the power to amend statutes in this way belongs to the legislature, not the judiciary.

In sum, considering the admittedly non-exclusive examples of "unfair" or "unconscionable" conduct identified in the statute, as well as the purposes underlying Congress' passage of the FDCPA, the Court finds that simply "blocking" a telephone number as alleged in this case cannot, as a matter of law, be considered unfair or unconscionable under 15 U.S.C. § 1692f. Accordingly, the Court grants Defendant's motion to dismiss Count VII of Plaintiff's Amended Complaint.

### III. Count VIII of Plaintiff's Amended Complaint

Congress was also concerned about debt collectors harassing debtors or engaging in abusive debt collection tactics. Accordingly, the FDCPA provides, in part, that:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(6).

To comply with this requirement, the individual telephoning the debtor must state "his or her name and capacity" and "disclose enough information so as not to mislead the recipient as to the purpose of the call." *Hosseinzadeh v. M.R.S. Assoc., Inc.*, 387 F.Supp.2d 1104, 1111-12 (C.D. Cal. 2005). Plaintiff does not allege that the individuals who telephoned him failed to comply with these

requirements. Instead, Plaintiff asserts that a "telephone call that does not identify the originator's telephone number does not meaningfully disclose the caller's identity." Plaintiff claims, therefore, that CSI, by preventing its telephone number from displaying on Plaintiff's caller ID device, violated this provision of the FDCPA.

At the heart of Plaintiff's position is his assertion that "the transmission of information [through] caller-id is a 'communication' separate and distinct from any subsequent live communication between the debt collector and consumer or voice message." In other words, Plaintiff takes the position that whenever a debt collector uses a telephone to contact a debtor, there exist two separate communications, each of which is subject to the meaningful disclosure requirement. Thus, the debt collector must meaningfully disclose its identity via the caller ID device and must again meaningfully disclose its identity once the caller is connected with either a human being or a recording device.

Plaintiff has identified no authority supporting the position that debt collectors are required to meaningfully disclose their identity both before and after contact is achieved with a debtor (or the debtor's recording device). Plaintiff is correct that "a consumer need not answer the telephone for a [FDCPA] violation to occur." *See, e.g., Hosseinzadeh*, 387 F.Supp.2d at 1110-13 (finding that debt collector violated 15 U.S.C. § 1692d(6) when it failed to meaningfully disclose its identity in messages left on debtor's answering machine). However, the question is not whether CSI can be held to violate the FDCPA only where Plaintiff first answers his phone. It certainly seems appropriate to find an FDCPA violation where a debt collector leaves a message on a recording device regarding a debt without meaningfully disclosing its identity, as such communication results from a telephone called placed by the debt collector. However, the authority supporting such sheds no light on the question whether debt collectors are required to disclose their identity via a caller ID device prior to

communicating with a debtor (or his recording device) as well as during any subsequent communication with the debtor (or his recording device).

The statutory provision quoted above makes it illegal for a debt collector to place a telephone call to a debtor without meaningfully disclosing its identity. To accept Plaintiff's argument the Court would have to conclude that the act of placing a single telephone call to a debtor, in fact, constitutes two separate telephone calls, each of which must satisfy the requirements of the FDCPA. Such does not comport with common sense. Nor does it comport with the language of the FDCPA which, as Plaintiff correctly asserts, "does not make any distinction between pre-answer and post-answer communications." The Court also notes that the FDCPA was enacted before the advent of caller ID, thus Congress certainly anticipated that the meaningful disclosure requirement could be satisfied *after* communication was established with the debtor or his recording device. While Congress could amend the FDCPA to require debt collectors to "meaningfully identify" themselves via caller ID devices, it has not done so and in the Court's estimation the FDCPA, as presently written, requires no such disclosure.

Furthermore, it is not entirely clear that a debt collector could satisfy the meaningful disclosure requirement through use of a caller ID device. As previously noted, to comply with this requirement, the caller must state "his or her name and capacity" and "disclose enough information so as not to mislead the recipient as to the purpose of the call." It is not clear how such information could be communicated via a caller ID device.

The Court notes an additional shortcoming with Plaintiff's interpretation of this particular provision. Plaintiff's theory that failure by a debt collector to "meaningfully identify" itself via a caller ID device constitutes a violation of the FDCPA would subject debt collectors to unfair liability because oftentimes "unavailable" (or "unknown" or "out of area") is transmitted to a recipient's caller ID device

not because of any conduct on the part of the debt collector, but rather because the telephone company simply refuses to pay the fee to retrieve and transmit the caller identification information from the relevant database. *See* Don Oldenburg, *Calls from the Wild*, Washington Post, May 21, 2006, available at http://www.washingtonpost.com/wp-dyn/content/article/2006/05/20/AR2006052000132_pf.html.

In sum, Plaintiff does not allege that CSI (or any of its agents or representatives) failed to identify themselves to Plaintiff or otherwise concealed the purpose for contacting him. While the Court certainly understands why Plaintiff would prefer that debt collectors "identify" themselves via a caller ID device prior to his answering his telephone, in the Court's estimation the statute (as presently written) does not require debt collectors to identify themselves twice during a single telephone call. Accordingly, the Court grants Defendant's motion to dismiss Count VIII of Plaintiff's Amended Complaint.

**IV.**          **Count XII of Plaintiff's Amended Complaint**

The Michigan legislature has also made illegal certain debt collection practices. Specifically, the Michigan Occupational Code Collection Practices Act provides that:

> A licensed collection agency shall not commit 1 or more of the following acts:
>
> * * *
>
> (e)      Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt.
>
> * * *

>   (g)   Communicating with a debtor without accurately disclosing the caller's identity or cause expenses to the debtor for a long distance telephone call, telegram, or other charge.

Mich. Comp. Laws § 339.915

Plaintiff asserts that CSI, by "blocking" its telephone number from appearing in his caller ID device, violated these two provisions. Plaintiff has identified no Michigan authority supporting the proposition that the failure by a debt collector to affirmatively identify itself via a caller ID device constitutes a violation of these provisions. The Court has, likewise, identified no such authority. For the reasons discussed above, the Court finds that Plaintiff's allegations fail to state a claim under either provision. Accordingly, the Court grants Defendant's motion to dismiss Count XII of Plaintiff's Amended Complaint.

## **CONCLUSION**

For the reasons articulated herein, <u>Defendant CSI's Motion for Judgment on the Pleadings for Counts VI, VII, VIII, & XII</u>, (dkt. #51), is **granted**. Specifically, the Court grants Defendant CSI's motion to dismiss Counts VI, VII, VIII and XII of Plaintiff's Amended Complaint.

An Order consistent with this Opinion will enter.


Date: October 2, 2007                                      /s/ Ellen S. Carmody
                                                           ELLEN S. CARMODY
                                                           United States Magistrate Judge